Gkeew, J.
delivered the opinion of the court.
This bill is brought to reform a bond, executed by the complainant, for the delivery of property which had been levied on by a constable, on the ground of mistake, or to restrain the defendants from insisting upon it, in a suit, in a court of law, because of the occun’ence of a mistake, whereby it was varied from the intention of the party by whom it was executed. The bond in which the mistake was alledged to exist, recites as follows, viz: “The condition of the above obligation is such, that on the day and date above written, W. W. Wright, one of the constables of said county hath levied on the following described property of the said James Helm,” &c. The execution by virtue of which the levy was made, was against James Helm; and Thomas Helm, the complainant, claimed the property as his own. The delivery bond, was executed by both James and Thomas Helm. Thomas Helm claimed the property mentioned in the delivery bond as his own, both before and after the levy was made; and about the time the bond was executed he mentioned his claim, and said he would bring suit for it. Suit was brought by him, and the above recital in the delivery bond was pleaded as an estopel. This bill is brought to reform the bond, and to restrain the defendants from insisting upon it, as an estopel.
It is not denied, that a court of equity will relieve against mistakes. "In Jeremy, Equity Jurisdiction, 268, it is said, “that the rectifying mistakes is the peculiar province of a court of Equity, and that parol evidence is admissible to assist the court in rectifying a mistake, not apparent upon the face of the deed.” Judge Story, in his Equity Jurisdiction, vol. 1, page 167, says, “a court of Equity would be of little value, if it could suppress only posi *76 tive frauds; Únd ledv'é mutual mistakes, innocently made, to work intolerable mischiefs, contrary to the intention of parties. It would be, to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party, who receives the benefit of the mistake, to resist the claims of justice.” There is no question, therefore, but that a court of Equity will relieve against a mistake of fact, when the words employed in an agreement, do not express the intention of the parties. ‘But it is insisted by the defendants in this case, that here, there is no mistake of fact, but that the mistake, if any, is one of law; that the ‘ complainant conveyed in the bond, the idea he intended to convey; but that, if mistaken at all, it was as to the legal consequence, and not as to a fact stated.
If this proposition be true, the complainant cannot be relieved. For it is certainly true, that if the party intended to use the words in the sense which they really do convey, if the thought they express, was the idea he intended to communicate, there is no mistake of fact, but a mistake of the legal consequence, as, if a party release a joint obligor, although he may not intend thereby to re* lease the co-obligor, and may be mistaken as to the legal conse* quence of the act, yet, there is no mistake as to the fact. He did intend to use the words in the release, in the sense they convey, but he intended it to be a release of one only. So here, if Thomas Helm intended to admit that the property levied on, belonged to James Helm, although he might not have intended thus to furnish matter, which would constitute a bar to his action, and as’to such consequence, might be mistaken, yet such mistake could not be relieved against,-because it would be a mistake of law, and- not of fact.
But, in this case, the mistake was not as to the effect of the admission, but was, as to the fact admitted. The bond recites, that the constable had levied on the following property of James Helm, &c. Now, the thing admitted is, the fact of the ownership of the property. Whether James Helm was the owner of the property or not, was not a legal consequence from any fact stated, but was itself the fact admitted. The proof shows beyond all doubt, that the complainant could not have intended to state this fact. He had denied it previously to the levy, had asserted his ownership after the levy was made, and about the time he was executing this paper, declared his intention to sue. The mistake is therefore clearly proven, and is plainly a mistake of fact. The case of Ball *77 vs. Storie, 1 Sim. and Stuart, 210, 1 Con. Eng. Ch. Rep. 109, is analogous to this. By the memorandum inserted in the agrees ment, the defendant intended to become personally responsible for the £20Q only, but it was so worded as to make him liable in addition for the £4000. The vice Chancellor said: “This is tho Common case of an instrument to'be reformed in Equity, because the drawer, has by mistake, miscarried in the expression of the agreement of the parties-.”
In that case, there was no question but that the defendant read the instrument, and knew what it contained. But he inadver-tantly overlooked the import of the words: knowing he had agreed to be bound for the £200, he supposed, the agreement expressed his understanding. But he was mistaken, and although himself a lawyer, he was relieved.
In this case, the object of the contract was to deliver the property. The agreement to do so, was the matter to which the complainant’s attention was directed. The recitations were deemed of but little importance, and very naturally, were not scrutinized. The oversight in the statement, inadvertently inserted in the bond by the draftsman, that it was the property of James Helm, would naturally occur, and we think upon reason and authority, ought to be relieved ■ in this court. Let the decree be entered accordingly.
DECREE.
Be it remembered that this cause came on to be heard on this 27th day of January, 1841, before the Honorable Nathan Green, William B. Reese and William B. Turley, Judges, &c, upon tho record of said cause from the chancery court, embracing bill, answer, exhibits, replication and proof, whereupon and upon argument of counsel, it appearing to the court that in executing the delivery bond in the pleadings mentioned, the'said Thomas Helm made a mistake of fact, by inserting therein contrary to his intention, the words, “the property of James Helm,” an admission that the property in the delivery bond was the property of James Helm, when he was himself claiming and insisting on his right to the same: and it appearing to the court that it would be improper and unjust to permit said recital, so made by mistake, to be used as an estopel to the prejudice of said Thomas Helm, in suits pending, or to be brought by or against him, and it appearing that said Thomas Helm has brought suit in the circuit court of Williamson *78 county for damages, for selling said property, against Wright and Graham, and that they, have set up or are about' to set up said recital as an estopel; it is therefore ordered and adjudged and decreed, that the decree of the chancellor be reversed; that said delivery bond be reformed and corrected in the matter of mistake aforesaid, and that the words “the ■ property of James Helm” be stricken therefrom, and that said defendants Wright and Graham be enjoined from setting up said recital in said delivery bond as an estopel in said suit. And it is further ordered that the complainants pay the costs of this cause in this and in the Chancery court, and that execution issue for the same as at law. .. '